ROBINSON et al. v. GUARANTY TRUST CO. OF NEW YORK et al.

(Supreme Court, Appellate Division, Third Department.   May 2, 1900.)

1. MORTGAGES—TRUSTEE'S MANAGEMENT OF PROPERTY—MORTGAGOR'S AGENT—PRESUMPTION.

Where a mortgage given to a trustee to secure corporate bonds provided that on default the trustee might enter on and manage the property, conduct the business, collect receipts, and make disbursements, and, after compensating himself, apply the net proceeds to the interest and principal of the bonds, a trustee managing the property under such provision ·will be presumed to do so as agent of the mortgagor, and not of the bondholders, in a stockholders' action against him for mismanagement of the trust.

2. MORTGAGED PROPERTY—MISMANAGEMENT BY TRUSTEE—FORECLOSURE SALE—
   INJUNCTION PENDENTE LITE.

   In order to secure its bonds, a corporation executed a mortgage of its property to a trustee, which provided that on default the trustee should enter on, control, and operate the property. This the trustee did pending foreclosure sale. Plaintiff, a stockholder, sued the trustee for mismanagement, and obtained an injunction pendente lite, on a nominal bond, prohibiting the sale. The trustee was financially responsible, and the suit did not attack the foreclosure decree. *Held*, that the injunction was improperly granted, it appearing that the litigation might continue indefinitely; that the corporation was hopelessly insolvent, and the property exposed to hazard from prior liens and general depreciation; that plaintiff's injuries could be redressed by a money judgment against the trustee; and that the matters complained of had already been adjudicated against plaintiff in the foreclosure proceedings.

Appeal from special term.

Suit by Emma A. Robinson, as trustee for Lucius Robinson, and in behalf of herself and all others, stockholders of the Elmira Municipal Improvement Company, similarly situated, against the Guaranty Trust Company of New York, impleaded with the Elmira Municipal Improvement Company, for removal of the trust company as trustee under a mortgage executed by the improvement company. From an order granting plaintiff an injunction pendente lite restraining the foreclosure sale of the mortgaged property, defendant appeals. Reversed.

Argued before PARKER, P. J., and HERRICK, MERWIN, and KELLOGG, JJ.

A. C. & J. P. Eustace (J. P. Eustace, of counsel), for appellant.

Davies, Stone & Auerbach (John B. Stauchfield and Benj. F. Tracy, of counsel), for Guaranty Trust Co.

Carter & Ledyard, for Improvement Co.

KELLOGG, J. The plaintiff sues as a stockholder of the Elmira Municipal Improvement Company, defendant. The cause of action, if one she can maintain, is for the benefit of that company. On April 1, 1892, the Elmira Municipal Improvement Company issued bonds aggregating $1,800,000, and executed a mortgage to secure them covering its property, which consisted of a small quantity of real estate, also certificates of equitable ownership of the majority stock in four other corporations, the value of the security being mainly in these certificates. $1,461,000 of the bonds were sold or disposed of. The defendant guaranty trust company was named trustee in the mortgage, with the usual powers and duties of trustees for bondholders fully expressed in the instrument. The mortgagor, the Elmira Municipal Improvement Company, obligated itself, among other things, to pay to the bondholders the semiannual interest on the bonds negotiated; and stipulated that in case of default in making such payment, and such default continuing for six months, the bonds, at the option of the guaranty trust company, should become immediately due and payable. The instrument also provides, in case of default for six months, that then the guaranty trust company may "enter into or upon all and singular the premises and property hereby conveyed, and each and every part thereof, and to have and to hold and use the same, by

its managers or servants, or other attorney or agents, conducting the business thereof, and making, or causing to be made, from time to time, all repairs or replacements, and such useful alterations, additions, and improvements as may seem judicious, and to collect all incomes, rents, dividends, issues, and profits of the same, and of every part thereof; and after deducting expenses of operating the same, and replacements, alterations, additions, and improvements, and all payments which may be made for taxes, assessments, charges, or liens prior to the lien of these presents upon said premises, property, appurtenances, and franchises, or any part thereof, or for or on behalf of any of said corporations, or their property or franchises, and compensation for its services, to apply the money arising as aforesaid to payment of interest on said bonds, and to interest on such delayed interest * * * to the persons holding the coupons evidencing the right to such interest; and, after paying all interest which shall become due, to apply the same to the satisfaction of the principal of the said bonds;" and after entry, or, without entry, on request of a majority in interest of the holders of the bonds, the guaranty trust company is authorized to sell the mortgaged property, or may institute foreclosure proceedings. It is charged in the complaint that the guaranty trust company managed the business. If that be so, it is to be presumed it did so under this irrevocable power and authorization of the mortgagor, and as its duly-authorized agent, and in pursuance of, and in accordance with, these instructions. Acting under this authority, the guaranty trust company was in no sense the agent of the bondholders; payment of money on coupons or bonds was a secondary matter; management of the business and preservation of the property was the primary; and in this the guaranty trust company was, under these provisions, not the agent of the bondholders, but the alter ego of the mortgagor. If this is the relation correctly expressed, the bondholders could not be chargeable with any malfeasance or misfeasance in management by the guaranty trust company.

The mortgagor failed to pay to the bondholders the interest falling due October 1, 1893, and failed to pay it within six months thereafter. The principal of the bonds was then declared to be due. This was on April 1, 1894. Interest subsequently maturing also remained unpaid, and in December, 1897, foreclosure proceedings were started, which resulted in a judgment, on January 24, 1898, of $1,678,151.28, over $200,000 of which was accrued interest on the bonds. The mortgaged property was advertised at different times for sale. Pending the last advertisement, and just prior to the date fixed for sale, this action was brought, and the injunction was granted, pending this litigation, prohibiting a sale at the instance of plaintiff, on filing an undertaking in the sum of $250. From this injunction order this appeal is taken.

Conceding that plaintiff has a cause of action which she can maintain, was it proper to grant an order staying the sale? And, if so, was it proper to grant it on an undertaking in the sum of $250? It is very clear that the length of this stay can be fairly estimated in years. The number of years somewhat depends upon plaintiff's ability to pay counsel and accountants. The field disclosed by the complaint, and which plaintiff desires to discover in detail, embraces the busi-

ness affairs of five separate corporations, each doing an extensive business, and covering a period of seven or eight years. There is no limit to the inquiry, and the court in passing upon the propriety of the stay should properly take into account the possibility and probability of an almost endless litigation, and will weigh the harm certain to be inflicted against the possible benefit to be gained.

Taking, first, a general view in this light: Assuming that plaintiff can maintain this action, precisely as though she were the Elmira Municipal Improvement Company, but not otherwise, we find from her complaint that she is the owner of 470 shares of stock, which the moving papers allege ought to be worth, and actually are worth, par, or $47,000. Assuming that this stock will be valueless in case the sale under the foreclosure judgment is permitted, it is clear that the measure of plaintiff's utmost claim is $47,000. It is clear that the plaintiff takes none of the risks of the delay pending litigation, for the $250 undertaking is only nominal, and cannot be said to be any proper assumption of risk. On the other hand, we find, from the papers used upon this motion, that the subsidiary companies whose stock constitutes the bulk of the security for this judgment of $1,678,151.28, and interest from January 24, 1898, are largely indebted, each having its own debt, which, of course, depreciates the value of the mortgaged stock, for these debts must be paid before the stockholder can be considered. The aggregate of these debts, on January 1, 1899, appears to have been $782,120.50. In addition, the parent company, the Elmira Municipal Improvement Company, was further indebted on that the last-named date for funded coupons of these bondholders in the sum of $383,513. The indebtedness of the subsidiary companies in the sum of $782,-120.50 obviously must be cared for. It is an obvious peril to the security of these bondholders. It is the duty of the company which the plaintiff claims here to represent to take care of this indebtedness, and protect the property it mortgaged. I do not understand, however, that either that company or the plaintiff here propose to do it. Certainly, the $250 undertaking is no protection. In case of long delay, such as this action gives promise of, and a stay of sale as the injunction provides, the bondholders' protection would seem to lie in themselves furnishing the money to pay off this indebtedness. From the moving papers it is fair to assume that the value of all the properties of the several companies is about $2,000,000. The conceded interest bearing indebtedness is over $2,600,000. The annual earnings about $103,000. The annual interest to be paid over $130,000. From this it is plain that the whole risk must be borne by the bondholders, for there is no margin here for them to fall back on. The mortgagor is hopelessly insolvent, and the mortgagor is the company which the plaintiff here claims to represent.

Besides the peril from the prior incumbrances mentioned is the risk of depreciation of the property; depreciation which may come to it from the elements, fire, and flood; from causes over which neither the mortgagor nor the trust company has any control; depreciation from bad judgment in management; the delinquency of accredited agents; or from new rival concerns, with new and more

economical appliances,—risks always attendant upon business of the character carried on by these companies, which no prudent man can foresee, but is always apprehensive of, and which no prudent man will assume gratuitously. This apportionment of risks seems most inequitable. The plaintiff, or the company she represents, assumes none, and the bondholders are to take all,—both risks and burdens. The plaintiff, without bonds, waits in hope of discovering something which will yield her a sum of money to be placed in the treasury of the Elmira Municipal Improvement Company. The bondholders are forced to wait, without hope of any gain, and in reasonable expectation of serious additional loss. These are considerations which should be conclusive on the question of judicious use of discretion in granting an injunction pendente lite, and unless it can be seen that plaintiff will probably recover in her action, and also that, unless an injunction were granted and allowed to continue, the injury would be serious and irreparable,—an injury for which money damages would be inadequate,—the injunction should not have been granted. And this leads us to an inquiry into those facts disclosed by the record before us which bear upon the probabilities of recovery and the irreparable character of the injury if a sale is permitted. We recognize in the person of David G. Robinson, the husband of plaintiff, the moving spirit of the controversy. Upon to some time after July 13, 1894,—the date of the so-called "tripartite agreement,"—Robinson and his associates filled the directorship, and had full control of the Elmira Municipal Improvement Company. It was the duty of this company to have paid to the bondholders the interest maturing on the bonds on October 1, 1893. The company failed to do so, and the company permitted the default to continue for six months, and in that way made all the bonds immediately payable. This was then past remedy, and the situation cannot be charged to subsequent mismanagement by the trust company, either in its individual capacity, or in its capacity as trustee for stockholders under the agency provisions of the mortgage, or in its capacity as trustee for the bondholders. The whole principal of the bonds then became due, and from that moment it was in the power of the majority in interest of the bondholders to force a foreclosure and sale. Now, what is it that plaintiff complains of? Not that the bonds or the interest on the bonds have been paid. Not that the trust company, in its capacity of trustee for the bondholders, has been furnished money by the mortgagor for the payment of the bonds. The complaint is wholly directed against the guaranty trust company in its individual capacity or in its capacity of servant or trustee of the improvement company. It alleges that it was trustee for the bondholders, and also held another trust,—was trustee for the improvement company and its stockholders by virtue of the provisions of the mortgage; that in divers ways it violated its trust as to the bondholders, and also as to the stockholders; and this complaint, in specification as to what this trust company did, says: It bought some of the capital stock of the improvement company, and claims against that company; took on a trust for the Mutual Insurance Company; bought,

64 N.Y.S.—34

with the insurance company, 600 bonds of the improvement company; got control, with the insurance company, of the board of directors of the improvement company, through the so-called "tripartite agreement," to which Robinson was a party; induced directors of the improvement company to publish false reports, which depreciated the bonds and stock; caused directors of gas company to apply to the court for dissolution; caused like proceedings to be taken against the improvement company; through directors it caused to be elected, took control of business of improvement company and subsidiary companies; caused the income of the companies to be dissipated; paid extravagant salaries and legal expenses; executed, with Robinson, on July 13, 1894, the so-called "tripartite agreement," and thereupon took the management of the improvement company and the subsidiary companies; sold valuable property at nominal prices; consented to wasteful and extravagant expenditures; combined with insurance company and others to carry through the so-called "reorganization plan"; suffered the improvement company to make a collusive default in the foreclosure suit; sought to depreciate the market value of the bonds, so as to get possession of them. The complaint asks relief wholly against the guaranty company; that it be restrained from further prosecuting the foreclosure suit; that it be removed; and that it account to the improvement company. This is all there is of the complaint. These general charges wholly relate to matters outside of the things of interest to the bondholders, and outside of any trust vested in the guaranty trust company for the bondholders. Not a single fact alleged, even if proven to be true, would be a defense, or partial defense, to the foreclosure suit. The wrong alleged to have been inflicted upon the bondholders can be best considered when presented by the bondholders. They are not here complaining. Nor has plaintiff the right to represent them. If there is in this complaint any cause of action alleged, it is a cause which calls for damages against the guaranty trust company and a money judgment only. The foreclosure judgment is not assailed. The plaintiff does not even ask to have it set aside or opened, nor are any facts stated which would remotely impeach the judgment. Plaintiff asks only that this trust company shall not be permitted to have further charge of it. Not a single reason is given for a stay of the sale.

This, it seems to me, shows that a sale would not operate to plaintiff's irreparable injury, at least beyond the usual injury a debtor suffers in having his property sold to pay a conceded obligation. The mode of sale provided by the judgment is not unfair,—first a sale in parcels; then a sale in lump, if a greater sum shall be offered. It appears that this judgment was about two years old when this action was commenced; that the plaintiff was advised of its commencement about the time it was instituted; that she knew that the improvement company, mortgagor, claimed that there was no defense, and that it would make none, but she made no immediate application for leave to defend. About a year afterwards she applied to the court, as both bondholder and stockholder, to be per-

mitted to make a defense. The matter alleged in the complaint was urged as her proposed defense. The motion was urged and opposed vigorously, and decided upon its merits. The court held both that these matters did not constitute a defense, and also that she was guilty of such laches that she was not entitled to defend. This was undoubtedly res adjudicata on the subject passed upon. Later on plaintiff brought an action as bondholder and stockholder, and other parties owning bonds also brought actions. The bonds of other parties, and the bonds of this plaintiff also, were purchased at a price near $1,500 for a $1,000 bond, purchased doubtless to secure peace. That action plaintiff then withdrew. Later on, and in January, 1900, plaintiff brought this action as stockholder and secured this injunction. In view of the extraordinary success of the former actions in selling $1,000 overdue bonds for $1,500 each, it does not seem to require the imagination of a Polonius to see the whale in this cloud. I fail to see anything, however, which should disturb the tranquillity of a court of equity,—anything which should move it to loan its strong hand in aid of any hold-up of the bondholders.

The complaint alleges a dual trust in the guaranty trust company, by the terms of the trust deed and mortgage; that one set of cestuis que trustent are the bondholders, and the other set is composed of the mortgagor and its stockholders. If this be true, it is also apparent that the trust for the bondholders is paramount, and must be first considered and protected. The complaint also alleges that the guaranty trust company has wronged both sets of cestuis que trustent. But this does not authorize one set to complain for the other, nor one set to attack the other. Each may separately bring action against this wrongdoer for the wrong it has suffered, and each may still insist upon the further and complete performance of the trust assumed by the trustee. The bondholders complain of no wrong, and demand full execution of the trust. This is their undoubted right. The other set, represented by the plaintiff, may, without interference with the rights of the bondholders, pursue the guaranty trust company, and recover compensation in damages for any injury it can make proof of. It is shown that the guaranty trust company is abundantly able to respond in any sum which plaintiff is likely to recover.

The order of injunction appealed from should be reversed, with $10 costs and disbursements, and $10 costs of this motion. All concur.